## Faber v. R.J. Frazier Co.
*[Cite as 8 AOA 620]*

*Case No. 88-L-13-227*
*Lake County, (11th)*
*Decided December 31, 1990*

*Jane M. Varga, 3794 Pearl Road, Cleveland, Ohio 44109, for Plaintiff-Appellee.*

*Anthony J. Divenere and William J. O'Neill, 300 National City Bank Building, 629 Euclid Avenue, Cleveland, Ohio 44114, for Defendant-Appellant R.J. Frazier Co.*

MAHONEY, J.

Appellant, R.J. Frazier Company, (hereinafter "Frazier"), appeals from the judgment of the trial court granting workers' compensation benefits to appellee, Sandra Faber, Administratrix of the estate of William Faber, deceased, (hereinafter "Faber").

The facts, which have been stipulated to by the parties, maybe summarized as follows.

On May 6, 1985 at the time of his death, decedent was an employee of Frazier, working as a crane operator at the Perry Nuclear Power Plant, which is owned by the Cleveland Electric Illuminating Company (hereinafter "CEI"). Frazier was a contractor which supplied general tradesmen for work at the nuclear plant.

The employees of all contractors, including Frazier's, performing services at the CEI Perry Nuclear Power Plant were governed by the National Industrial Maintenance Agreement which required all employees to be at the physical location of their job site when their shift began. In order to meet this requirement, all employees were to arrive and check in six minutes before their scheduled shift, and all employees were permitted to leave their physical work site six minutes before the end of their shift so that they could reach the parking lot by the end of their shift.

The decedent completed his shift and checked out with the timekeeper at the badge gate at approximately 11:55 p.m. on May 5, 1985. He then left the employee parking lot and traveled down the access road towards the public highway. The access road was a private, four-lane road owned and operated by CEI and was the only means of ingress and egress to the nuclear plant.

After traveling twelve hundred feet, the decedent was killed in an automobile accident at approximately 12:02 a.m. on May 6, 1985.

The decedent was struck and killed by an employee of another contractor working at the nuclear plant who was coming to work. The collision occurred approximately one hundred ten feet from the main gate and the public highways, Parmly Road and Center Road, which are adjacent to the CEI property.

There was a gate at the entrance of the access road, and there were signs marking the area as private property of CEI. The property, including the access road, was enclosed by an industrial fence. CEI controlled and maintained the access road, parking lots, and the premises.

On June 14, 1985, Faber filed an application for death benefits pursuant to R.C. 4123.59. On November 26, 1985, the hearing officer granted Faber's claim, finding that the death was the result of an injury occurring in the course of and arising out of employment. The Cleveland Board of Review and the Industrial Commission of Ohio upheld the hearing officer's decision on appeal.

Frazier appealed the Industrial Commission's decision to the Lake County Court of Common Fleas. By agreement, the case was submitted to the trial court on the aforementioned stipulations of fact and on trial briefs.

On November 23, 1988, the trial court found that the CEI plant constituted the employment premises, regardless of the fact that it was neither owned nor controlled by Frazier. The court concluded that the injury was compensable, pursuant to R.C. 4123.01(C), because it occurred on the premises within the zone of employment and that Faber, as the representative of the decedent's estate, was entitled to participate in the benefits of the workers' compensation fund.

Frazier has filed a timely notice of appeal and now brings the following assignment of error:

"The trial court erred in holding that Faber's death occurred in the course of, and arose out of his employment with Frazier."

The issue presented by Frazier is whether the injury sustained by the decedent occurred in the course of and arose out of his employment with Frazier. For an injury to be compensable under the Workers' Compensation Act, the injury must occur "in the course of, and arising out of, the injured employee's employment." R.C. 4123.01 (C).

The trial court found decedent's injury compensable because it occurred on the employment premises. While recognizing the "going and coming rule" which generally bars compensation for injuries sustained while traveling to or from a fixed place of employment, *Bralley v. Daugherty* (1980), 61 Ohio St. 2d 302, the court based its decision on *Griffin v. Hydra-Matic Division, General Motors Corp.* (1988), 39 Ohio St. 3d 79.

In *Griffin,* the Ohio Supreme Court found compensable the injury of an employee who slipped and fell on an icy spot while traversing a driveway between the plant and the employer's parking lot after completing her employment for the day. The court rejected an argument based on the "special hazard" rule enunciated in *Littlefield v. Pillsbury Co.* (1983), 6 Ohio St. 3d 389, noting that the "special hazard" rule is merely an exception to the "going and coming" rule and concerns only injuries sustained off the employment premises. *Griffin* at 81.[1]

Refusing to extend the "special hazard" rule of *Littlefield* to employment site injuries, the Supreme Court held that:

"An injury sustained by an employee upon the premises of her employer arising during the course of employment is compensable pursuant to R.C. Chapter 4123 irrespective of the present or absence of a special hazard thereon which is distinctive in nature or quantitatively greater than hazards encountered by the public at large. *(Walborn v. General Fireproofing Co.* [1947] 147 Ohio St. 507, 34 0.0. 413, 72 N.E. 2d 95; *Slanina v. Indus. Comm.* [1927], 117 Ohio St. 329, 158 N.E. 829; and *Fassig v. State, ex rel. Turner* [1917], 95 Ohio St. 232, 116 N.E. 104, paragraph five of the syllabus, overruled to the extent they are inconsistent herewith)." *Griffin* at syllabus.

Applying *Griffin,* the trial court found that the CEI plant constituted the employment premises, notwithstanding that it was not owned or controlled by Frazier. The court noted that:

"*** A barbed wire fence marked its perimeter. The access road was the sole means of ingress and egress for all evening employees without differentiation. It was not general public road, but a private road which provided ingress and egress to plant workers, employees and those doing business with CEI.

"When the accident occurred decedent had not left the premises, but was approximately 110 feet from the only night exit gate. Fra-

zier's reliance upon off-premises injury cases is misplaced and inapplicable to this situation.

"***

"Nor is it significant, as Frazier contends, that the premises were owned and controlled by CEI. While these factors may be significant in off-premises injuries, actual ownership and control is not paramount to on-premises injuries, which are, by definition, unique to the situs of employment, not who owns or controls the property. Thus, a shopping center parking lot even though not owned by the tenant has long been held within the zone of a tenant's employees' employment for purposes of compensating for injuries occurring thereon, *Friskhorn v. Flowers* (1971), 26 Ohio App. 2d 165, 167. The same applies to a university employee who sustains an injury in a lot operated by a multiple member organization, with university assistance, which provides parking to university employees. *Sloss v. Case Western Reserve Univ.* (1985), 23 Ohio App. 3d 47, 49)."

Frazier argues that the trial court erred in concluding that the injury occurred on the employment premises because the plant and the access road were not controlled by Frazier and because the access road was not the work site of Frazier. Furthermore, Frazier argues that the trial court erred in ignoring *Bralley, supra,* which dealt with an off-premises injury. Frazier argues that the injury occurred off premises, on the property not owned, maintained or controlled by Frazier and, thus, the injury is compensable only if it falls under either of the two exceptions to the "going and coming" rule, *i.e.,* the "zone of employment" exception or the "special hazard" exception.

We agree with the trial court that the fenced CEI property which includes the plant, parking lots, and access road, comprised the employment premises Of the decedent, regardless of its actual ownership, maintenance and control. *Friskhorn v. Flowers, supra.* Under workers' compensation law, the negligence of an employer is irrelevant in determining whether an injury is compensable. See, *Indus. Comm. v. Weigandt* (1921), 102 Ohio St. 1, paragraph two of the syllabus.

Frazier argues that the trial court confused "premises" with "zone of employment" because it stated that off premises cases are inapplicable but then discussed "zone of employment" which "is an exception to the

'going and coming' rule and, therefore, relevant only to off-premises cases."

Admittedly, there is some confusion with the term "zone of employment." The Supreme Court did not mention the term "zone of employment" in its analysis in *Griffin* nor in its more recent decision in *Fisher v. Mayfield* (1990), 49 Ohio St. 3d 275. However, contrary to Frazier's argument that "zone of employment" is exclusive to off-premises cases, "zone of employment" was the theory for allowing compensation in on-premises cases also. See, *Marlow v. Goodyear Tire & Rubber Co.* (1967), 10 Ohio St. 2d 18.

In *Fisher, supra,* the Supreme Court recognized the difficulty and unfairness in applying stringent rules to workers' compensation cases. Noting that these cases must be reviewed upon their own distinct facts, the Court explained:

"*** This is because workers' compensation cases are, to a large extent, very fact specific. As such, no one test or analysis can be said to apply to each and every factual possibility. Nor can only one factor be considered controlling. Rather, a flexible and analytically sound approach to these cases is preferable. Otherwise, the application of hard and fast rules can lead to unsound and unfair results.

"***" *Id.* at 280.

The *Fisher* court further refined the earlier tests it set forth in *Bralley, supra,* and in *Lord v. Daugherty* (1981), 66 Ohio St. 2d 441. In *Bralley,* the court held that an employee's injury was compensable under the Workers' Compensation Act only if it was "received in the course of, and arising out of, the injured employee's employment." The test was whether there was a "causal connection" between the injury and the employment. *Id.* at 303. One year later in *Lord, supra,* the court refined the "arising out of" element by adopting a "totality of the circumstances" test for determining the existence of a "causal connection" between the injury and the employment. The court set forth three factors to be considered in making this determination:

"*** (1) the proximity of the scene of the accident to the place of employment, (2) the degree of control the employer had over the scene of the accident, and (3) the benefit the employer received from the injured employee's presence at the scene of the accident." *Lord* at syllabus.

In *Fisher,* the court expressly recognized that the two elements -- "arising out of," which relates to time, place and circumstances of the injury, and "in the course of," which relates to the causal connection between the injury and the employment were conjunctive in nature and, thus, both elements have to be satisfied before compensation will be allowed. However, the two elements must be construed liberally in favor of allowing compensation pursuant to R. C. 4123.95. *Id.* at 277-278.

Using the list of factors set forth in *Lord,* the *Fisher* court applied the totality of the circumstances test and permitted compensation for an injury suffered by a teacher fifteen minutes prior to ·her normal working hours. The injury was sustained at another school, but in the same district in which she worked, when she went to collect money contributions for a "flower fund" and to have co-workers sign a sympathy card.

Applying the principles of liberal construction, the totality of the circumstances and the factors set forth in *Lord, supra,* to the case *sub judice,* we find that decedent's injury arose out of and in the course of his employment and is, therefore, compensable under R.C. 4123.01(C).

Decedent's injury occurred on the employment premises just minutes after he checked out at the badge gate; thus, he was clearly injured in the course of his employment. *Griffin, supra.* See, also, *Indus. Comm. v. Barber* (1927), 117 Ohio St. 373; *Kasari v. Indus. Comm.* (1932), 125 Ohio St. 410. Accordingly, the "in the course of" element has been satisfied.

The other element, "arising out of," is determined by the totality of the circumstances and the three factors identified in *Lord:* proximity, control and benefit.[2]

The first factor, proximity to the place of employment, has been satisfied as the accident occurred on the employment premises. The second factor is the degree of control Frazier had over the scene of the accident. Although CEI controlled and maintained the private access road and not Frazier, this was the only means of ingress and egress for decedent as well as all other employees working at the nuclear power plant. Frazier did not provide another means to its work site. Furthermore, pursuant to the contract with CEI, Frazier required its employees to arrive and check in six minutes before their scheduled shift and permitted them to leave six minutes prior to the end of their shift. Decedent was clearly fulfilling this contract term when the fatal accident occurred. See *Indus. Comm. v. Davison* (1928), 118 Ohio St. 180. Other courts have recognized that ownership and control are not paramount to injuries sustained on the employment premises and have found them to be compensable. See *Frishkorn, supra; Sloss, supra.* Moreover, the absence of this one factor cannot be considered controlling. *Fisher* at 280.

The third factor is the belief it to the employer by the employee's presence at the scene of the accident. It is clear that Frazier benefitted from the decedent arriving prior to his shift and leaving six minutes before the end of the shift in accordance with the terms of the contract Frazier entered into with CEI. Having decedent check out as he did fulfilled the terms of the contract and promoted a smooth transition between shifts as employees leaving would vacate parking spaces for those employees reporting for duty and thereby increasing the chances that employees would be at their stations six minutes before their shift duty began.

Based on the foregoing, we find that a causal connect in existed between the decedent's injury and his employment, and we conclude that the injury arose cut of his employment. Accordingly, the second element has been satisfied.

Considering the specific facts of the present case, decedent's injury is compensable under either the *Griffin* analysis, which the trial court applied, or the *Fisher* analysis applied herein as the facts of the instant case are much stronger than those in *Fisher* and those in a multitude Of other cases to numerous to cite which awarded benefits.

For the foregoing reasons, appellant's assignment of error is overruled and the judgment of the trial court is affirmed.

CHRISTLEY, P.J., and FORD, J., concur.

---

[1] *Griffin* was certified to the Supreme Court by the Lucas County Court of Appeals because it conflicted with our court's decisions in *Johnson v. Packard Electric Division* (1986), 33 Ohio App. 3d 250, and *Daisley v. Packard Electric Division* (Sept. 15, 1986), Trumbull App. No. 3692, unreport-

ed. The Supreme Court's decision in *Griffin* effectively overrules these two cases.

[2] The *Fisher* court noted in footnote 2 on page 279 that the list of factors was not intended to be exhaustive but illustrative of what should be considered so that the totality of the circumstances approach may continue to evolve in workers' compensation cases.